

**EPSTEIN
BECKER
GREEN**

Attorneys at Law

Lauren Ann Malanga
t  212.351.3729
f  212.878.8600
lmalanga@ebglaw.com

*Plaintiff is directed to submit a response to this letter motion on ECF no later than September 15, 2023.*

*Date: September 12, 2023*

SO ORDERED.

LEWIS J. LIMAN
United States District Judge

September 11, 2023

BY ECF

Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *Brevard v. Credit Suisse*
              Case No. 23 Civ. 428 (LJL)

Dear Judge Liman:

      We are counsel for Defendant Credit Suisse Securities (USA) LLC ("Defendant" or the "Bank")[1] in the above-referenced matter.  We write, further to the August 31, 2023 conference (the "Conference"), to respectfully request: (1) that Plaintiff be ordered to produce electronic copies, with all necessary metadata, of the Brevard Emails or, alternatively, that Plaintiff be ordered to submit her e-mail account and/or electronic devices for forensic examination; and (2) that the Court permit non-party witness Karen Chung ("Ms. Chung") to testify remotely at the evidentiary hearing, scheduled for October 12, 2023.[2]

      **Background**

      On April 18, 2023, Defendant moved to compel arbitration and dismiss this matter. Plaintiff opposed the application arguing that Credit Suisse should be equitably estopped from enforcing the parties' mutual agreement to arbitrate based on alleged representations in the Brevard Emails.  Credit Suisse filed its reply, which, among other things, challenged the authenticity of the Brevard Emails on the grounds that: (1) Defendant had performed numerous, exhaustive searches for the Brevard Emails through its email archives, and did not locate <u>any</u> of these purported documents; (2) Ms. Chung, the HR representative whose communications are purportedly

---

[1] Upon information and belief, Credit Suisse Securities (USA) LLC is incorrectly identified in the caption as simply "Credit Suisse." The undersigned only represents Credit Suisse Securities (USA) LLC and does not appear on behalf of any associated, subsidiary, or parent entity of the bank.

[2] All references to the "Brevard Emails" are to the alleged emails Plaintiff has annexed as Exhibit "A," to her opposition to Defendant's Motion to Compel Arbitration.  *See* Plaintiff's Opposition, dated July 5, 2023 (Docket No. 19) (the "Opposition"). A copy of the Brevard Emails is annexed hereto as **Exhibit "1."**

Honorable Lewis J. Liman
September 11, 2023
Page 2

reflected in the Brevard Emails has no recollection of ever sending or receiving these documents; and (3) a cursory review of the Brevard Emails revealed numerous structural irregularities and inconsistencies that called their authenticity into question. Critically, Credit Suisse confirmed, and provided sworn testimony from its Global Head of Collaboration Engineering that every possible method of unilaterally searching for the Brevard Emails had been exhausted, and that the only additional search the Bank could perform would require document metadata – which Plaintiff refused to provide.

At the Conference, the Court scheduled an evidentiary hearing to resolve this factual dispute regarding the authenticity of the Brevard Emails. Plaintiff repeatedly reiterated her claim that the Brevard Emails were authentic, but said that it was impossible to prove their authenticity. Specifically, Plaintiff stated that she doesn't "have electronic copies of all the documents," because she "use[d] a public email, and when the storage gets full, they automatically randomly start deleting emails." *See* Transcript of August 31, 2023, Conference ("Transcript") at 5, a copy of which is annexed hereto as **Exhibit "2."** Further, Plaintiff noted that she "had to create another email with another public email called Yahoo," in order to somehow temporarily resolve this problem. *Id.* at 5-6. Plaintiff noted that "[a]ll I have is just the copies of my emails now," and that in filing the Brevard Emails with the Court, she had

> ***copied and pasted into an email*** and sent to the pro se claim [sic] to present a response to their email, and immediately she said it wasn't authentic.

Transcript at 6. (emphasis added). In response to these admissions, Defendant requested that Plaintiff submit, at a minimum, her computer for forensic examination by a third-party. Plaintiff said that it was "not possible"; that she didn't have "that same laptop"; and that she used a "public email at the library." *Id.* at 13. In response to Defendant's inquiry, the Court instructed the parties to make any requests regarding the evidentiary hearing through letter-motion. This application follows.

**Defendant Requests that the Court Order Plaintiff to Produce Original Copies of the Brevard Emails or Submit Her Personal Devices to Forensic Examination.**

Based on Plaintiff's admissions at the Conference, the need for a forensic analysis of the Brevard Emails is critical to resolving the question of their authenticity. As such, Defendant respectfully requests that the Court order the following:

1) Production by Plaintiff of the electronic versions of the Brevard Emails from Plaintiff's Gmail account: mbrevard1@gmail.com.[3]

---

[3] Production must be accompanied by load files: (1) permitting the retention of parent-attachment relationships, (2) permitting the loading of ESI onto a review platform, and (3) that include, at a minimum, the following metadata fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, FROM, TO, CC, BCC, SUBJECT, DATE_SENT, TIME_SENT, SORT DATE, FILE_EXTEN, FileName, NATIVE Path, TEXTPATH. For Plaintiff's

Honorable Lewis J. Liman
September 11, 2023
Page 3

2) If Plaintiff claims that the Brevard Emails are not retrievable through her Gmail account, Defendant requests that she be ordered to provide, to a forensic vendor to be designated by Defendant,[4] the following:

   a. her username and password to the mbrevard1@gmail.com account. The vendor shall be authorized to search Plaintiff's email account, for the sole and exclusive purpose of locating electronic versions of the Brevard Emails. The forensic vendor will follow its standard forensic search protocol, and will provide to Defendant only the Brevard Emails, or, if those emails are not located, the vendor will advise that the emails were not located and the steps taken to find them; and

   b. The computer and mobile devices Plaintiff used on or about April 2020, when the Brevard Emails were purportedly sent and received, for an identical targeted search by a forensic vendor for any saved copies of the Brevard Emails. If Plaintiff is not in possession of the computer and mobile device(s) she used during that time-period, she must state when the devices were disposed, why they were not properly maintained, and what efforts she has taken to retrieve them.

3) Based on Plaintiff's statements at the Conference: that she only has "copies of [her] emails," and yet "copied and pasted into an email" the Brevard Emails, which she filed electronically with the Court, it appears that Plaintiff is claiming that she ***created copies*** of the Brevard Emails for submission with her Opposition – either based on a physical printed copy or by memory. Indeed, the Brevard Emails bear the "Exhibit A" marker on the first page of the document itself, which suggests that all of the text was included in a Word-Document or other non-email file that Plaintiff modified. As such, Defendant requests that Plaintiff:

   a. Confirm that she has a printed copy of the original Brevard Emails as represented during the Conference, and produce copies of these original documents to Defendant; and

   b. Describe how she constructed the version of the Brevard Emails that was filed with the Court in her Opposition (i.e. scanned a printed copy; re-typed based on review of a printed copy; or re-typed based on her memory of the alleged correspondence) and produce the electronic devices she used to construct Exhibit A for a targeted search by a forensic vendor.

---

convenience, Defendant can provide an electronic link through which she can easily upload these files in the proper format.

[4] The costs of the forensic examination shall be at Defendant's sole expense. Defendant, however, reserves its right to move for sanctions against Plaintiff, seeking the recovery of, among other things, the costs associated with this forensic investigation.

Honorable Lewis J. Liman
September 11, 2023
Page 4

The production of this information and documentation is crucial to resolving any dispute regarding the authenticity of the Brevard Emails, and it is well-settled that discrepancies or other inconsistencies in discovery responses may justify forensic analysis of a party's electronically stored information. *See Schreiber v. Friedman*, 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017). A forensic examination is justified particularly where, as here, Defendant has already submitted compelling evidence that the Brevard Emails do not exist and appear to be fabricated. *See id.* ("Courts have also ordered computer imaging when there is reason to believe that a litigant has tampered with the computer or hidden relevant materials that are the subject of court orders").

Notably, the Court should also be aware that the email address Plaintiff purportedly used to send the Brevard Emails – mbrevard1@gmail.com – is the ***same*** Gmail account she uses to this day. Indeed, Plaintiff has used that account to correspond with our firm regarding the instant matter. *See* Email Correspondence with Plaintiff, dated July 11, 2023, a copy of which is annexed hereto as **Exhibit "3."** As such, if the Brevard Emails exist, electronic copies should be easily accessible to Plaintiff – or a forensic examiner upon investigation.

Based on the above, Credit Suisse respectfully requests that the Court order Plaintiff to produce the above-referenced information and devices for examination on or before September 22, 2023, to provide sufficient time for review in advance of the evidentiary hearing.[5]

**Defendant Requests that Non-Party Karen Chung be Permitted to Testify Remotely.**

Pursuant to Rule 43(a), "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." This decision is left to the sound discretion of the Court, and judges have "discretion to allow live testimony by video." *See Rodriguez v. Gusman*, 974 F.3d 108, 114 (2d Cir. 2020). Factors that courts consider in finding "good cause" to permit remote testimony include, among other things, distance to the courthouse, the sufficiency of remote video technology, and whether any potential prejudice exists related to a remote appearance. *See Flores v. Town of Islip*, 2020 WL 5211052, at *2-3 (E.D.N.Y. Sept. 1, 2020). Here, each of these factors weigh in favor of allowing Ms. Chung to testify remotely.

Ms. Chung is a non-party, former employee of Credit Suisse who lives in Washington D.C. She has another job and is currently scheduled to fly internationally to Ireland from Dulles International Airport the night of October 12 – the day of this evidentiary hearing. Notwithstanding these facts, Ms. Chung has agreed to appear and provide remote testimony to assist the court in resolving this factual dispute, without the need for a subpoena. Furthermore, as

---

[5] Defendant reserves its right to move for fees and costs based on, among other things, spoliation, fabrication, and fraud on the court. Should the court conclude that Plaintiff has committed such a fraud, the sanction of dismissal with prejudice and an award of fees and costs to Defendant, is fully justified. *See Scholastic, Inc. v. Stouffer*, 221 F. Supp.2d 425, 444 (S.D.N.Y. 2002), *aff'd* 81 F. App'x 396 (2d Cir. 2003) (awarding sanctions based on party's "intentional bad faith conduct and fail[ure] to correct her fraudulent submissions, even when confronted with evidence undermining the validity of those submissions."); *AJ Energy LLC v. Woori Bank*, 2019 WL 4688629, at *12 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020) (affirming sanction of dismissal along with an award of fees and costs).

Honorable Lewis J. Liman
September 11, 2023
Page 5

Ms. Chung has already stated in her sworn declaration, she has no memory of the Brevard Emails and thus, her testimony on this point – the only point of inquiry at this hearing – will be extraordinarily brief. Each of these factors strongly support the use of remote testimony in this case, and Defendant respectfully submits that requiring Ms. Chung to take time off from work, travel to New York, stay overnight in a hotel, and risk missing her flight that evening is overly burdensome to Ms. Chung particularly when weighted against the minimal probative value her testimony could provide. *See Flores*, 2020 WL 5211052, at *3 (noting that primary outside counsels' residence in Washington D.C., New Jersey, and upstate New York, "weigh[s] in favor of conducting a virtual bench trial."); *Rinaldi v. SCA La Goutte, D'Or*, 2022 WL 443779, at *2 (S.D.N.Y. Feb. 14, 2022) (granting request for remote testimony).

Moreover, because this evidentiary dispute shall be resolved by the Court, and not a jury, "the issues of prejudice that could arise in the jury context are simply absent." *See Flores*, 2020 WL 5211052, at *2. Indeed, the availability of "Zoom and similar technologies permit real time testimony, allowing for direct inquiry from the Court," and only further provide the "appropriate safeguards" envisioned by Rule 43. *See id*.

For these reasons, Defendant respectfully requests that the Court permit Ms. Chung to testify remotely at the October 12, 2023 evidentiary hearing.

Thank you for your consideration of these matters.

Respectfully submitted,

*/s/ Lauren Malanga*

Lauren Malanga